**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN OVERSIGHT, | |
| Plaintiff, | |
| v. | Civil Action No. 24-0454 (DLF) |
| DEPARTMENT OF JUSTICE, *et al.,* | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION**
**FOR A PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

BACKGROUND ................................................................................................................... 2

STATEMENT OF FACTS ..................................................................................................... 3

ARGUMENT ......................................................................................................................... 9

    I.     This Court Has Jurisdiction to Grant the Requested Relief ................................. 10

    II.    American Oversight is Entitled to a Preliminary Injunction ............................... 11

          A.     American Oversight is Likely to Suceed on the Merits............................. 11

          B.     American Oversight Will Be Irreperably Harmed Absent the Requested Relief ......................................................................................................... 13

          C.     The Requested Relief Will Not Burden Others' Interests ....................... 16

          D.     The Public Interest Favors the Requested Relief ..................................... 17

CONCLUSION ..................................................................................................................... 18

# <u>TABLE OF AUTHORITIES</u>

Cases

*Aguilera v. F.B.I.*,
  941 F. Supp. 144 (D.D.C. 1996) ........................................................................... 15

*Al-Fayed v. C.I.A.*,
  254 F.3d 300 (D.C. Cir. 2001) ............................................................................. 11

*Am. Oversight v. U.S. Dep't of State*,
  414 F. Supp. 3d 182 (D.D.C. 2019) ................................................................ 11, 15

*Calderon v. U.S. Dep't of Agric.*,
  236 F. Supp. 3d 96 (D.D.C. 2017) ........................................................................ 15

*Citizens for Responsibility and Ethics in Wash. v. Fed. Election Comm'n*,
  711 F.3d 180 (D.C. Cir. 2013) ............................................................................. 12

*Citizens for Responsibility and Ethics in Washington v. U.S. Dep't. of Justice*,
  746 F.3d 1082 (D.C. Cir. 2014) ............................................................................. 7

*Cleaver v. Kelley*,
  427 F. Supp. 80 (D.D.C. 1976) ............................................................................. 15

*Ctr. to Prevent Handgun Violence v. U.S. Dep't of the Treasury*,
  49 F. Supp. 2d 3 (D.D.C. 1999) ............................................................................ 18

*Dunlap v. Presidential Advisory Comm'n on Election Integrity*,
  286 F. Supp. 3d 96 (D.D.C. 2017) ........................................................................ 15

*Elec. Frontier Found. v. Off. of the Dir. of Nat'l Intel.*,
  542 F. Supp. 2d 1181 (N.D. Cal. 2008) ................................................................ 14

*Elec. Priv. Info. Ctr. v. Dep't of Just.*,
  416 F. Supp. 2d 30 (D.D.C. 2006) ........................................................................ 15

*Jacksonville Port Auth. v. Adams*,
  556 F.2d 52 (D.C. Cir. 1977) ............................................................................... 17

*Leadership Conf. on C.R. v. Gonzales*,
  404 F. Supp. 2d 246 (D.D.C. 2005) ...................................................................... 15

*Mapother v. Dep't of Justice*,
  3 F.3d 1533 (D.C. Cir.1993) .................................................................................. 7

*N.L.R.B. v. Robbins Tire & Rubber Co.*,
    437 U.S. 214 (1978) ................................................................................ 14, 18

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ...................................................................................... 14

*Oglesby v. U.S. Dep't of Army*,
    920 F.2d 57 (D.C. Cir. 1990) ......................................................................... 10

*Payne Enterprises v. U.S.*,
    837 F.2d 486 (D.C. Cir.1988) ........................................................................ 15

*Sai v. Transp. Sec. Admin.*,
    54 F. Supp. 3d 5 (D.D.C. 2014) ..................................................................... 16

*Serono Labs., Inc. v. Shalala*,
    158 F.3d 1313 (D.C. Cir. 1998) ..................................................................... 11

*U.S. Dep't of Just. v. Rep. Comm. for Freedom of the Press*,
    489 U.S. 749 (1989) ...................................................................................... 18

*U.S. Dep't of Just. v. Tax Analysts*,
    492 U.S. 136 (1989) ...................................................................................... 11

*Vaughn v. Rosen*,
    484 F.2d 820 (D.C. Cir. 1973) ....................................................................... 17

*Wash. Post v. Dep't of Homeland Sec.*,
    459 F. Supp. 2d 61 (D.D.C. 2006) ............................................................*Passim*

Statutes

5 U.S.C. § 552(a)(3)(A) ....................................................................................... 11
5 U.S.C. § 552(a)(4)(B) ....................................................................................... 10
5 U.S.C. § 552(a)(6)(A)(i) .............................................................................. 11, 12
5 U.S.C. § 552(a)(6)(A)(ii) .............................................................................. 4, 12
5 U.S.C. § 552(a)(6)(C)(i) ................................................................................... 10
5 U.S.C. § 552(b)(7)(A) ......................................................................................... 7

Other Authorities

170 Cong. Rec. H5985 ........................................................................................... 6
H.R. Rep. No. 93-876 ..................................................................................... 10, 15

## INTRODUCTION

Before the Court is a very real scenario so unusual it is difficult to imagine a Court having to decide a case on an identical set of facts—and to exercise its extraordinary powers to grant a preliminary injunction—more than once in a lifetime. Simply put, on January 20, 2025, Donald J. Trump is set to begin his second term as President of the United States, and his hand-picked selection for U.S. Attorney General, Matt Gaetz, has been reportedly investigated for significant criminal allegations relating to sex trafficking by the very agencies he would oversee if he is confirmed to this post by the Senate, or appointed during a Senate recess by the President-elect.

This Freedom of Information Act case commenced approximately nine months ago when Plaintiff American Oversight filed a Complaint seeking documents held by the Defendants, the DOJ Criminal Division and the FBI, related to the criminal investigation of then-Congressman Gaetz. The once-relatively-reasonable timeline on which Defendants have been processing responsive documents now promises so much delay as to be useless to American Oversight—and the public—as the requested materials will almost certainly not be produced prior to a hearing on Mr. Gaetz's confirmation or his appointment to U.S. Attorney General.

For the reasons outlined below, American Oversight now seeks a preliminary injunction and respectfully requests this Court to order Defendants to process all records and produce all non-exempt responsive documents, along with a *Vaughn* index, by December 16, 2024, and to order an expedited briefing schedule to commence shortly after on any remaining contested withholdings or exemptions. The relief American Oversight requests will yield a relatively modest adjustment to a FOIA processing schedule that is already underway, but it would make a world of difference in fulfilling FOIA's purpose to inform the public of government activities on a timeline in which the responsive records will still be relevant and meaningful.

**BACKGROUND**

On March 30, 2021, the *New York Times* reported that then-Congressman Matt Gaetz was under investigation by the Justice Department regarding allegations "he had a sexual relationship with a 17-year-old and paid for her to travel with him."[1] The investigation reportedly was part of a broader investigation into a political ally of Mr. Gaetz, Joel Greenberg, who was indicted in 2020 for charges which included sex trafficking of a child, and centered on whether Mr. Gaetz violated federal sex trafficking statutes.[2]

The following month, the then-Chairman of the U.S. House of Representatives' Committee on Ethics announced that the Committee was "aware of public allegations that Representative Matt Gaetz may have engaged in sexual misconduct and/or illicit drug use, shared inappropriate images or videos on the House floor, misused state identification records, converted campaign funds to personal use, and/or accepted a bribe, improper gratuity, or impermissible gift, in violation of House Rules, laws, or other standards of conduct," and that the Committee had begun an investigation and would "gather additional information regarding the allegations."[3]

On December 1, 2022, Joel Greenberg was sentenced to 11 years in prison, reportedly after cooperating with federal investigators and providing information related to Mr. Gaetz.[4] In

---

[1] Michael S. Schmidt, Katie Benner, Nicholas Fandos, *Matt Gaetz Is Said to Face Justice Dept. Inquiry Over Sex With an Underage Girl*, N.Y. TIMES (March 30, 2021, updated May 17, 2021), available at https://www.nytimes.com/2021/03/30/us/politics/matt-gaetz-sex-trafficking-investigation.html.

[2] *See id.*

[3] Statement of the Chairman and Ranking Member of the Committee on Ethics Regarding Representative Matt Gaetz, House Comm. on Ethics (Apr. 9, 2021), available at https://ethics.house.gov/press-releases/statement-chairman-and-ranking-member-committee-ethics-regarding-representative-22.

[4] *See* Marshall Cohen, *Joel Greenberg Sentenced to 11 Years After Cooperating with Federal Probe into Matt Gaetz*, CNN (Dec. 1, 2022, 5:59 PM),

February 2023, attorneys for Mr. Gaetz announced that the DOJ had informed them that it had

concluded their investigation and would not be pursuing charges against Mr. Gaetz.[5]

## **STATEMENT OF FACTS**

On March 8, 2023, following news of the announcement from Mr. Gaetz's attorneys that

the investigation had concluded, American Oversight submitted a FOIA request to the DOJ

Criminal Division and a FOIA request to the FBI, each seeking access to the following records:

> All FBI form 302s reflecting the content of all interviews
> conducted as a part of the government's investigation of
> Congressman Matt Gaetz, including investigations into
> allegations of sex trafficking or obstruction of justice, as well as
> any investigation of other potential violations related to those
> investigations. Specifically, this request seeks 302s from the
> investigation(s) that Congressman Matt Gaetz's office has
> announced has concluded.
>
> All other records intended to summarize, memorialize, or record
> witness interviews or witness statements collected or used in the
> investigation(s) described in Item 1, including written proffers,
> written summaries of oral proffers, transcripts or recordings of
> any witness interviews or statements, and any other record
> summarizing, memorializing, or reproducing the content of
> witness interviews or statements collected or used in connection
> with the above-described investigations.

Decl. of Loree Stark, Nov. 19, 2024, ¶ 5 and Exhibits A and B attached thereto. The requests

sought responsive records from January 1, 2020, through the date the search would be

conducted. *See id.*

---

https://www.cnn.com/2022/12/01/politics/joel-greenberg-sentencing/index.html; *see also*
Judgment, *U.S. v. Greenberg*, No. 20-cr-00097 (M.D. Fla. Dec. 1, 2022), ECF No. 183.

[5] Ryan Nobles, *et al.*, *DOJ Tells Matt Gaetz That He Won't Be Charged in Sex Trafficking
Probe, His Lawyers Say,* NBC News (Feb. 15, 2023, 11:30 AM),
https://www.nbcnews.com/politics/congress/doj-decides-not-charge-rep-matt-gaetz-sex-
trafficking-investigation-rcna70839.

The DOJ Criminal Division acknowledged American Oversight's request and assigned it an internal tracking number, Compl., ECF No. 1, at ¶ 16; Stark Decl. ¶ 6, Exhibit C, but did not provide responsive documents nor an explanation for withholding responsive documents prior to the filing of this suit. *See* Compl. ¶ 17, Stark Decl. ¶ 7.

The FBI on March 15, 2023, acknowledged American Oversight's request and assigned it an internal tracking number. Compl. ¶ 11, Stark Decl. ¶ 8, Exhibit D.

On November 24, 2023, the FBI issued a purportedly final response to American Oversight's request, stating that "the records . . . are categorically denied pursuant to FOIA exemptions (b)(6) and (b)(7)(C)," and that American Oversight had "not sufficiently demonstrated that the public's interest in disclosure (relating to the operations and activities of the government) outweigh the personal privacy interests of these individual(s)." Compl. ¶ 12, Stark Decl. ¶ 9, Exhibit E.

American Oversight appealed the FBI's adverse determinations, objecting to the agency's improper withholding in full of records under Exemptions (b)(6) and (b)(7)(C) and for its failure to conduct a reasonable search. Compl. ¶ 13, Stark Decl. ¶ 10, Exhibit F. The FBI received American Oversight's December 22, 2023 appeal on January 3, 2024, Compl. ¶ 14; Stark Decl. ¶ 11, Exhibit G, but did not provide a determination on the appeal within the 20 business days required by statute. *See* Compl. ¶ 15, Stark Decl. ¶ 12; *see also* 5 U.S.C. § 552(a)(6)(A)(ii).

Having received no further communication from the FBI after the submission of the appeal, nor from DOJ after the acknowledgment of the receipt of the request, on February 16, 2024, American Oversight filed suit, alleging that the Defendants (1) failed to conduct a reasonable search for responsive documents, and (2) were wrongfully withholding non-exempt responsive records. *See generally* Compl., ECF No. 1.

On June 24, 2024, Defendants filed an Answer to the Complaint. *See* ECF No. 8. On June 25, 2024, the Court ordered the parties to confer and file a report proposing a schedule for further proceedings. *See* June 25, 2024 Minute Order. On July 25, 2024, the parties filed a Joint Status Report, in which the DOJ and the FBI agreed to update Plaintiff on processing by September 10 and within thirty days (i.e., by August 25, 2024), respectively. *See* Joint Status Report, ECF No. 10, at 1-2. The parties also agreed to file a Joint Status Report every sixty days and to defer the filing of summary judgment motions until productions were completed and the Plaintiff had time to review productions and discuss with Defendant any issues outstanding at that time. *See id.*

On September 23, 2024, the parties filed a second Joint Status Report. *See* ECF No. 11. In the report, the DOJ represented that it had completed its search and its "preliminary review of the results and assessment of volume of potentially responsive records is ongoing." *Id.* at ¶ 2. It further represented that it was awaiting a response from a September 10, 2024 email to Plaintiff pertaining to potentially narrowing the request. *Id.* at ¶ 3.

The FBI represented in the report that it would conduct monthly interim reviews of potentially responsive material, and "inform Plaintiff of the status of the review and release any releasable records reviewed each month." *Id.* at ¶ 4. The FBI further represented that it anticipated that the first interim review would be completed "on or around October 25, 2024," and that it anticipated that the full review would be completed by February 2025. *Id.*

In a letter dated October 25, 2024, the FBI informed American Oversight that in its first monthly interim review of documents, all material it had reviewed was "categorically exempt from disclosure pursuant to FOIA Exemptions (b)(6), (b)(7)(C), and underlying FOIA Exemptions (b)(1), (b)(3), (b)(5), (b)(7)(A), (b)(7)(D), and (b)(7)(E)." Stark Decl. ¶ 13, Exhibit

H. On the same day, the parties resolved via email the DOJ's outstanding requests related to narrowing. Stark Decl. ¶ 14.

On November 6, 2024, Donald Trump was elected as the 47th President of the United States, with his second term set to begin on January 20, 2025.[6] In the week following, President-elect Trump began announcing his selections for cabinet positions, and stated on social media his desire to utilize recess appointments, which would allow him to appoint nominees outside of the traditional Senate confirmation process.[7] On November 13, 2024, the President-elect announced that he had selected Mr. Gaetz as his nominee for United States Attorney General and to lead the Department of Justice.[8] On the same day, Mr. Gaetz resigned, effective immediately, from his seat in Congress. *See* 170 Cong. Rec. H5985 (Nov. 14, 2024) (House Clerk reading November 13, 2024 resignation letter of Mr. Gaetz). Mr. Gaetz's resignation has called into question whether the House Ethics Committee will release a report with findings from its own investigation into Mr. Gaetz.[9]

---

[6] *See*, *e.g.*, Donald Trump Elected 47th President of the United States, PBS News (Nov. 6, 2024, 7:14 AM), https://www.pbs.org/newshour/politics/donald-trump-elected-47th-president-of-the-united-states.

[7] *See* Kaia Hubbard, *Trump Demands Senate Republicans Allow Recess Appointments As They Demand New Leader*, CBS News (Nov. 11, 2024, 2:34 PM), https://www.cbsnews.com/news/trump-senate-recess-appointments-new-leader/; *see also* Donald J. Trump (@realDonaldTrump), X (Nov. 10, 2024, 2:21 PM), https://x.com/realDonaldTrump/status/1855692242981155259.

[8] Donald J. Trump (@realDonaldTrump), X (Nov. 13, 2024, 4:23 PM), https://x.com/realDonaldTrump/status/1856810027937599512.

[9] Julie Tsirkin & Rebecca Shabad, *Speaker Mike Johnson Says He Will 'Strongly Request' That Ethics Committee Withhold Its Matt Gaetz Report*, NBC News (Nov. 15, 2024, 1:52 PM), https://www.nbcnews.com/politics/congress/speaker-mike-johnson-says-will-strongly-request-ethics-committee-withh-rcna180354.

On November 14, counsel for American Oversight emailed counsel for Defendants, stating that, given the unusual circumstances of Mr. Gaetz potentially leading the agency holding the records relating to his investigation, the organization believed there was now "an elevated and significant public interest in the quick release of these records." Stark Decl. ¶¶15-16, Exhibit I. Counsel for American Oversight inquired about the potential for expedited processing of the documents by December 16, 2024, with a briefing schedule on any contested issues or withholdings to begin shortly after. Stark Decl. ¶ 17, Exhibit I.  Counsel for American Oversight also asked about the FBI's invocation of 5 U.S.C. § 552(b)(7)(A) ("Exemption 7(A)")[10] in its October 25, 2024, letter informing American Oversight of the results of its interim review. Stark Decl. ¶ 18, Exhibit I.  Specifically, counsel for American Oversight inquired if there was a current investigation into Mr. Gaetz, given that Exemption 7(A), which allows an agency to withhold records if it believes the release of such records "could reasonably be expected to interfere with enforcement proceedings," typically applies when an investigation is ongoing, and not after an investigation is closed, like that into Mr. Gaetz reportedly had been. *Id.* Finally, counsel for American Oversight inquired if the Defendants would be willing to make a discretionary release of any of the materials American Oversight had sought in its FOIA requests, with the understanding that Defendants would redact any sensitive identification

---

[10] Exemption 7(A) allows agencies to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552 (b)(7)(A). To justify withholding documents pursuant to Exemption 7(A), agencies must demonstrate that "disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated." *Citizens for Responsibility and Ethics in Washington v. U.S. Dep't. of Justice*, 746 F.3d 1082, 1096 (D.C. Cir. 2014) (citing *Mapother v. Dep't of Justice,* 3 F.3d 1533, 1540 (D.C. Cir.1993)).

information pertaining to victims or witnesses, given the import of the issue. Stark Decl. ¶ 19, Exhibit I.

On Friday, November 15, counsel for Defendants responded, stating that she could send a request for expedited processing directly to the agencies, and that she had a meeting with the FBI on Monday, November 18, and would be back in touch "ASAP." Stark Decl. ¶ 20, Exhibit I. On Monday, November 18, 2024, counsel for American Oversight responded, stating that the organization "believes that the unusual circumstances and urgency of this matter demand a fast resolution and determination on responsive records," and that it intended to file a Motion for Preliminary Injunction, requesting the Court "to order completed processing of the documents, a final determination, and the production of a *Vaughn* index by December 16, with an expedited briefing schedule on any contested exemptions/withholdings to begin shortly after." Stark Decl. ¶ 21, Exhibit I. Counsel for American Oversight inquired, pursuant to Local Civil Rule 7(m), whether Defendants agreed or opposed to any part of the relief that American Oversight would seek in its Motion and requested that counsel for Defendants respond with any position had on the Motion by 5 p.m. on Tuesday, November 19. Stark Decl. ¶ 22, Exhibit I.

Counsel for American Oversight in the same email requested clarification again on whether the FBI has an open investigation into Mr. Gaetz, and whether the agency would consider voluntarily disclosing responsive documents, noting that the FBI had made such voluntary disclosures in the past, including when it voluntarily released 302 materials in 2016 following the investigation into former Secretary of State Hillary Clinton's use of a personal email server.[11] Stark Decl. ¶ 23, Exhibit I.

---

[11] *FBI Releases Documents in Hillary Clinton E-Mail Investigation*, Fed. Bureau Investigation (Sept. 2, 2016), https://www.fbi.gov/news/press-releases/fbi-releases-documents-in-hillary-clinton-e-mail-investigation.

On November 19, 2024, counsel for Defendants responded, stating that the FBI had finished processing, offering further options for narrowing DOJ's search results, and providing that both agencies would need at least 90 days to prepare for briefing. Stark Decl. ¶ 24, Exhibit I. Counsel for Defendants also stated that the FBI believed that all responsive documents had been appropriately withheld, and that the DOJ anticipated a categorical denial to American Oversight's requests as well. *Id.*

Counsel for American Oversight responded, stating that although Plaintiff would be willing to engage in further narrowing discussions, it could not agree to a briefing schedule on Defendants' terms because Mr. Gaetz would likely be overseeing Defendant agencies by that time. Stark Decl. ¶ 25, Exhibit I. Counsel for American Oversight stated that Plaintiff intended to move forward with the Motion for Preliminary Injunction, and would assume that Defendants opposed the Motion unless counsel for Defendants stated otherwise. *Id.*

American Oversight now seeks to compel Defendants to process all records and produce all non-exempt responsive documents, along with a *Vaughn* index, by December 16, 2024, and requests this Court to order an expedited briefing schedule to commence shortly after on any remaining contested withholdings or exemptions.

## ARGUMENT

American Oversight is entitled to preliminary injunctive relief in this case, which involves lawful requests for public records with the potential to inform American Oversight and the public about matters of significant and urgent importance. The records American Oversight is seeking relate to Defendants' investigations of a former congressman who President-elect Trump has selected to serve as the next U.S. Attorney General, a position with power over the Defendant agencies that hold these records. Given (1) American Oversight's entitlement to the non-exempt portions of the requested records and its likelihood of succeeding on the merits, (2)

the urgent need to inform the public about matters relating to the suitability of the person

positioned to be the next U.S. Attorney General prior to a confirmation hearing or appointment

resulting in the prospect of irreparable harm if determination and subsequent release are delayed,

(3) the absence of harm to Defendants and other FOIA requesters, and (4) the public interest in

prompt disclosure of non-exempt responsive documents, American Oversight plainly meets the

requirements for preliminary injunctive relief in this matter.

## I.    THIS COURT HAS JURISDICTION TO GRANT THE REQUESTED RELIEF.

The FOIA statute provides jurisdiction for this Court to consider this matter and grant all

necessary injunctive relief. It states:

> On complaint, the district court of the United States . . . in the District
> of Columbia, has jurisdiction to enjoin the agency from withholding
> agency records and to order the production of any agency records
> improperly withheld from the complainant. In such a case the court shall
> determine the matter de novo . . . .

5 U.S.C. § 552(a)(4)(B).

When an agency fails to comply with the applicable time-limit provisions in the FOIA

statute, including the timeline to respond to an administrative appeal, a requester "shall be

deemed to have exhausted his administrative remedies with respect to such request . . . ."

5 U.S.C. § 552(a)(6)(C)(i); *see also Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 62 (D.C. Cir.

1990) (holding that a requester may bring suit if an agency fails to comply with statutory time

limits). This includes a failure to respond to a FOIA request or an administrative appeal within

the statutorily imposed timeframe. *See Wash. Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d

61, 74 (D.D.C. 2006) ("[F]ailure to process FOIA requests in a timely fashion is 'tantamount to

denial.'") (quoting H.R. Rep. No. 93-876, at 6 (1974)). American Oversight has therefore

exhausted all applicable administrative remedies, its claims are properly subject to this Court's

jurisdiction, and therefore, this Court is empowered to order appropriate relief, including entering the processing and production schedule American Oversight seeks through this motion.

## II.    AMERICAN OVERSIGHT IS ENTITLED TO A PRELIMINARY INJUNCTION.

In considering a plaintiff's request for injunctive relief, a court must weigh four factors: (1) whether the plaintiff has a substantial likelihood of success on the merits; (2) whether the plaintiff would suffer irreparable injury absent injunctive relief; (3) whether an injunction would substantially injure other interested parties; and (4) whether the grant of an injunction would further the public interest. *Al-Fayed v. C.I.A.*, 254 F.3d 300, 303 (D.C. Cir. 2001); *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1317–18 (D.C. Cir. 1998); *Am. Oversight v. U.S. Dep't of State*, 414 F. Supp. 3d 182, 185 (D.D.C. 2019). Consideration of these factors demonstrates American Oversight's entitlement to injunctive relief in this case.

### A.    American Oversight is Likely to Succeed on the Merits.

American Oversight is entitled to the timely processing of its FOIA request and production of non-exempt responsive records. FOIA clearly and unambiguously provides that federal agencies—like the named Defendants in this case—must make records "promptly available to any person" who reasonably describes the records they seek in accordance with established procedures. 5 U.S.C. § 552(a)(3)(A); *see also id.* § 552(a)(6)(A)(i) (requiring a determination whether to comply with a FOIA request within 20 working days). Defendants have failed to meet these clear statutory obligations here.

The records American Oversight seeks—records relating to the DOJ Criminal Division and FBI's investigation into Mr. Gaetz—undoubtedly fall within the statutory category of agency records that an agency must produce under FOIA. *See U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 146 (1989) (defining "agency records" as materials "create[d] or obtain[ed]" by the agency and within the agency's control at the time the request is made). In addition, the requests

reasonably describe the records sought (specifying a timeframe, subject matter, and category of record) and complied with all necessary procedures. *See* Compl. ¶ 9.

Once American Oversight submitted its initial FOIA request to the DOJ Criminal Division on March 8, 2023, it was entitled to a determination by the agency as to the scope of the records that would be produced within twenty working days. 5 U.S.C. § 552(a)(6)(A)(i); *Citizens for Responsibility and Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 182–83 (D.C. Cir. 2013) ("[T]he agency must at least indicate within the relevant time period the scope of the documents it will produce and the exemptions it will claim with respect to any withheld documents."). Similarly, once American Oversight submitted its appeal of the FBI's adverse determination, it was entitled to a decision within twenty working days of the agency's January 3, 2024 receipt of the appeal. *See* 5 U.S.C. § 552(a)(6)(A)(ii). When the FBI failed to provide a determination on American Oversight's appeal within twenty working days, and when the DOJ failed to provide *any* response at all beyond an acknowledgment of American Oversight's request, Defendant agencies failed to comply with the clear deadlines set out in FOIA and provide American Oversight the timely processing and prompt disclosure to which it is entitled.

American Oversight will ultimately prevail in demonstrating its entitlement to timely processing and prompt disclosure of any non-exempt records responsive to its FOIA request. FOIA provides clear statutory directives to agencies in responding to FOIA requests, and Defendants have violated them. In the meantime, given that Mr. Gaetz could conceivably, within fewer than three months, be overseeing the Department of Justice—and thus, Defendants—American Oversight urgently requires the Court's intervention to ensure Defendants fulfill their obligations promptly.

**B.      American Oversight Will Be Irreparably Harmed Absent the Requested Relief.**

It is difficult to overstate the harm to be suffered absent the requested relief in this extraordinary situation. President-elect Trump is set to take office on January 20, 2025,[12] approximately two months from the date of this filing. He has nominated Mr. Gaetz to lead the DOJ,[13] a position that would put Mr. Gaetz in charge of the Defendant agencies which oversaw an investigation into significant criminal allegations against him and which now hold records concerning their investigation, including those responsive to American Oversight's FOIA requests. President-elect Trump has signaled a willingness to use recess appointments for cabinet positions,[14] meaning that a controversial nominee like Mr. Gaetz could avoid a thoughtful, substantive Senate confirmation process under which the allegations against him could be examined in public. Any report created by the House Ethics Committee relating to the allegations against Mr. Gaetz may never see the light of day following Mr. Gaetz's resignation from the U.S. House of Representatives.[15] The value and availability of the information American Oversight is seeking will drop precipitously once Mr. Gaetz takes the post of U.S. Attorney General.

The loss of the ability to gain prompt access to the non-exempt portions of the requested records would be particularly harmful to American Oversight, an organization whose mission is to ensure public transparency into government actions, promote accountability for government officials, and disseminate information obtained on matters of public importance to the public.

---

[12] *See*, *e.g.*, *Donald Trump Elected 47th President of the United States*, *supra* note 6.

[13] Donald J. Trump, *supra* note 8.

[14] Donald J. Trump, *supra* note 7.

[15] Tsirkin & Shabad, *supra* note 9.

Stark Decl. ¶ 26. American Oversight's entire purpose is to use government transparency to help it, and the public, monitor the activities of government officials and agencies. *Id.* Prompt determinations and timely production of non-exempt records will enable American Oversight to provide information to the public about a government investigation into the person who has been hand-picked by the President-elect to serve as the head of the country's most powerful law enforcement agencies. *Id.* ¶ 27.

American Oversight's goal to inform the public about Defendants' investigation into Mr. Gaetz is in line with the principles that animate FOIA. *See N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) ("The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed.").Further delay will deprive the public of information it needs to participate in discussions—and petition senators who may be charged with confirming Mr. Gaetz—in an informed manner. American Oversight and the public need the non-exempt information contained in the requested records promptly, as is required by the statute.

The window for public education and discussion will be open only briefly, and it is imperative that American Oversight receive the records it seeks before that window closes. *See Elec. Frontier Found. v. Off. of the Dir. of Nat'l Intel.*, 542 F. Supp. 2d 1181, 1187 (N.D. Cal. 2008) ("Although, and perhaps because, the Court cannot predict the timing of passage of the legislation in light of the ongoing debate in the legislature and with the Administration, the Court finds that delayed disclosure of the requested materials may cause irreparable harm to a vested constitutional interest in 'the uninhibited, robust, and wide-open debate about matters of public importance that secures an informed citizenry.'") (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)).

Indeed, by now it is almost axiomatic that "stale information is of little value." *Payne Enterprises v. U.S.*, 837 F.2d 486, 494 (D.C. Cir.1988); *accord Calderon v. U.S. Dep't of Agric.*, 236 F. Supp. 3d 96, 114 (D.D.C. 2017); *see also Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 286 F. Supp. 3d 96, 110 (D.D.C. 2017) ("District courts in this circuit have recognized that, where an obligation to disclose exists, plaintiffs may suffer irreparable harm if they are denied access to information that is highly relevant to an ongoing public debate." (citing *Wash. Post*, 459 F. Supp. 2d at 75; *Elec. Priv. Info. Ctr. v. Dep't of Just.*, 416 F. Supp. 2d 30, 41 (D.D.C. 2006))). Thus, "failure to process FOIA requests in a timely fashion is 'tantamount to denial.'" *Wash. Post*, 459 F. Supp. 2d at 74 (quoting H.R. Rep. No. 93-876, at 6 (1974)).

That is no doubt why courts in this jurisdiction have repeatedly issued preliminary injunctions in FOIA cases where the requester seeks information urgently needed to inform a pending or developing situation. *See, e.g.*, *id.* at 74–75 (finding irreparable harm where requested records could inform public opinion in advance of upcoming election); *Am. Oversight*, 414 F. Supp. 3d at 187 ("The likely irreparable harm to American Oversight also stems from the fact that, if non-exempt responsive records exist, the public may not otherwise have access to them."); *Elec. Priv. Info. Ctr.*, 416 F. Supp. 2d at 40–41 (finding irreparable harm where requested records related to "current and ongoing debate surrounding the legality of the Administration's warrantless surveillance program"); *Leadership Conf. on C.R. v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005) (finding urgency requirement for expedition satisfied based on "upcoming expiration of the special provisions of the Voting Rights Act in 2007"); *Aguilera v. F.B.I.*, 941 F. Supp. 144, 151–52 (D.D.C. 1996) (finding irreparable harm where requested records related to prisoner's challenge to conviction while already serving prison sentence); *Cleaver v. Kelley*, 427 F. Supp. 80, 81–82 (D.D.C. 1976) (granting preliminary injunction for

15

records needed for upcoming criminal trial); *cf. Sai v. Transp. Sec. Admin.*, 54 F. Supp. 3d 5, 10–11 (D.D.C. 2014) (finding no irreparable harm because plaintiff offered no evidence that requested records would be of "vital public interest for an upcoming congressional election . . . or congressional or agency decision-making process requiring public input" (internal citations and quotation marks omitted)).

As in many of those cases, American Oversight's ability to contribute to the public's understanding of the suitability of the President-elect's candidate for U.S. Attorney General would be irreparably harmed if Defendants are not required to promptly process American Oversight's FOIA requests, produce all responsive documents, and participate in an expedited briefing schedule to address any outstanding issues relating to withholdings or exemptions so that prompt disclosure of documents can occur before Mr. Gaetz may take leadership of the very agencies that hold these records.

### C.    The Requested Relief Will Not Burden Others' Interests.

No other interests would be harmed by granting American Oversight its requested relief. Defendants cannot claim to be harmed by an order compelling them to comply with their statutory obligations, particularly when their work to meet those requirements is already well underway. The deadlines American Oversight seeks will move up Defendants' timeline by approximately two months—a minimal burden in the FOIA context, where litigants often wait years for production to be complete.

Nor would granting American Oversight's relief unduly burden other FOIA requesters. In fact, ordering Defendants to rapidly search for, process, and produce records responsive to American Oversight's request will likely actually *aid* other FOIA requesters who have sought records on the vital subject matter of American Oversight's requests.

Both the DOJ Criminal Division and the FBI have already completed searches. Joint Status Report, ECF No. 10; Joint Status Report, ECF No. 11. The FBI has started interim monthly reviews and estimated that, on its current schedule, it will complete processing by February 2025. Joint Status Report, ECF No. 11. Although Defendants would have to move more quickly than anticipated to complete the processing, it would not be a considerable undertaking given that the searches have been conducted and one Defendant is already estimated to complete processing in approximately three months. Thus, an order from this Court that Defendants promptly process American Oversight's requests, provide all non-exempt responsive records along with a *Vaughn*[16] index, and order any briefing on contested exemptions or withholdings on an accelerated schedule set by this Court will not harm the interests of the non-moving party or any other entity.

### D.  The Public Interest Favors the Requested Relief.

It is difficult to conceive of many more extraordinary cases where the public interest so clearly favors a preliminary injunction. The modest requested relief—prompt processing of documents and an accelerated briefing schedule—would protect the public's right to government transparency and its essential interest in the informed and meaningful participation in the process of the confirmation or appointment of a U.S. Attorney General who will, with no hyperbole, be charged with enforcing the law of the land. Consequently, the requested relief clearly serves the public interest.

Courts in this jurisdiction have long recognized that "there is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate." *Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977); *accord Wash. Post*, 459 F.

---

[16] *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

Supp. 2d at 76. The very existence of the Freedom of Information Act is rooted in the self-evident premise that transparency and disclosure are a public benefit in a participatory democracy. *U.S. Dep't of Just. v. Rep. Comm. for Freedom of the Press*, 489 U.S. 749, 772–73 (1989); *see also Ctr. to Prevent Handgun Violence v. U.S. Dep't of the Treasury*, 49 F. Supp. 2d 3, 5 (D.D.C. 1999) ("There is public benefit in the release of information that adds to citizens' knowledge" of government activities.).

But the public benefit of injunctive relief here extends far beyond the general public interest in transparency and faithful adherence to FOIA. Congress enacted FOIA to ensure that citizens are able to participate in public debate in an informed manner, and this interest grows with the gravity of public decisions at hand. *See Robbins Tire*, 437 U.S. at 242 ("The basic purpose of [the] FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed.").

Courts have recognized the importance of timely disclosure when information is relevant to elections. *See, e.g.*, *Wash. Post*, 459 F. Supp. 2d at 74–75. The public's need is arguably stronger in advance of a confirmation or appointment of U.S. Attorney General, because the public will not have an opportunity to revisit this decision—and petition senators—post-confirmation or appointment with the benefit of either hindsight or belated disclosures. The public interest favors a preliminary injunction.

## **CONCLUSION**

For the reasons stated herein, American Oversight respectfully requests this Court to enter a preliminary injunction and order Defendants to process all records and produce all non-exempt responsive documents, along with a *Vaughn* index, by December 16, 2024, and to order

an expedited briefing schedule to commence shortly after on any remaining contested

withholdings or exemptions.

Dated: November 19, 2024                                     Respectfully submitted,


                                                            */s/ Loree Stark*
                                                            LOREE STARK
                                                            D.C. Bar #90021926
                                                            AMERICAN OVERSIGHT
                                                            1030 15th Street NW Suite B255
                                                            Washington, DC 20005
                                                            (304) 913-6114
                                                            loree.stark@americanoversight.org
                                                            *Counsel for Plaintiff*

19